Al-Harbi, Inc.

v.

Virginia Alcoholic Beverage Control Board

Case No. (Chancery) HH-641

Ramadan, Inc.

v.

Virginia Alcoholic Beverage Control Board

Case No. (Chancery) HH-642

October 11, 1996

BY JUDGE T. J. MARKOW

These matters are before the court on petitions for appeal, based on the Virginia Administrative Process Act, Va. Code §§ 9-6.14:1 to 9-6.14:25 (1993 and Supp. 1996), filed by Al-Harbi, Incorporated, and Ramadan, Incorporated, against the Commonwealth of Virginia Alcoholic Beverage Control Board.

### Procedural History

On October 20, 1995, the Virginia Alcoholic Beverage Control Board (ABC or Board) notified Al-Harbi, Inc. (Licensee) of charges of violations of the state's alcoholic beverage control laws. Prior to this date, Licensee had contracted to sell its business to Ramadan, Inc. (Applicant) contingent

upon, among other things, Applicant's obtaining an ABC license for the premises. To this end, Applicant applied for a license on April 19, 1995. Applicant then entered into a management agreement with Licensee to run the business pending the completion of the sale. After local residents (Objectors) opposed the application and contested Licensee's compliance with the ABC laws, ABC consolidated the respective matters for the proceedings before the Hearing Officer.

The charges investigated and alleged by ABC are as follows:

(1) On September 15, 1994, the Licensee sold alcoholic beverages (beer) to a person who it knew or had reason at the time to believe was intoxicated;

(2) A cause exists for which the Board would be entitled to refuse to issue a license and to revoke an existing license, in that the place occupied by Licensee, and to be occupied by Applicant, is so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from issuance of the license and operation thereunder by Licensee;

(3) Between May 16, 1995, and July 3, 1995, the licensee allowed consumption of alcoholic beverages upon its licensed premises except [sic] as provided under the ABC Act;

(4) The place occupied by Licensee has become a meeting place or rendezvous for drunks and users of illegal narcotics;

(5) Licensee is not the legitimate owner of the business conducted under the license issued by the Board or another person has an ownership interest in the business which has not been disclosed; and

(6) A cause exists for which the Board would be entitled to refuse to issue a license and to revoke an existing license, in that the place occupied by Licensee, and to be occupied by Applicant, is so situated with respect to residences that the operation under the license has adversely affected real property values or substantially interfered with the usual quietude and tranquillity of the residences.

Chief Hearing Officer Michael J. Oglesby conducted a hearing on November 21, 1995. The Hearing Officer found that testimony by the Objectors, an ABC agent, and Licensee's representatives substantiated charges 1, 3, and 5. Charges 2 and 6 were likewise found to be supported. The

Hearing Officer did not find evidence to substantiate charge 4. He, therefore, recommended revoking the privilege of selling alcohol and denying the application for a license.

Both Licensee and Applicant appealed this recommendation to the Board. The Board conducted separate hearings for each party. After hearing the evidence, the Board adopted the Hearing Officer's proposed decision. Licensee has now appealed the revocation, and Applicant has appealed the license denial. Licensee appeals from these assignments of error: (1) the Board erred in finding that Licensee sold alcoholic beverages to intoxicated persons; (2) the Board erred in finding that the establishment is located so as to disrupt the peace and good order of the area; (3) the Board erred in finding that the Licensee allowed consumption of alcoholic beverages on their premises; and (4) the Board erred in finding that the establishment is located so as to disrupt the usual quietude and tranquillity of the surrounding residential neighborhood. Applicant appeals from and assigns these errors: (1) the Board erred in finding that the establishment is so located that the issuance of a license would disrupt the peace and good order of the area; (2) the Board erred in finding that the establishment is so located that the issuance of the license would disrupt the usual quietude and tranquillity of the surrounding residential neighborhood; and (3) the Board erred in finding that Applicants have and would, if issued a license, operate a noisy and disorderly establishment.

Licensee's attorneys acknowledged before the Board that Licensee was responsible for all actions that occurred while Applicant acted as manager. This does not obviate Applicant's responsibility for the same actions. As such, all actions that took place during the time the store was owned by Licensee and run by Applicant can be attributed to both petitioners.

## Standard of Review

On an appeal of a final agency decision to the Circuit Court, the burden is on the complaining party to "designate and demonstrate an error of law subject to review by the court." Va. Code § 9-6.14:17. The court must give deference to an agency decision based on the proper application of its expert discretion. See Fralin v. Kozlowski, 18 Va. App. 697, 701 (1994). Additionally, the court must give deference to the findings of the Hearing Officer, and of the Board, as both had the opportunity to observe the witnesses first hand and determine the credibility and weight to give each piece of evidence.

The errors assigned by the Petitioners here deal with whether the agency had sufficient evidential support for its findings of fact. *See Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242 (1988). Where there has been a formal agency hearing pursuant to VAPA, as here, the determination of factual issues is to be made "upon the whole evidential record provided by the agency." *Virginia Real Estate Comm'n v. Bias*, 226 Va. 262, 269 (1983). The findings must be supported by substantial evidence in the record. The phrase "substantial evidence" refers to "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Id.* (emphasis in *Bias*). Agency findings of fact may be rejected only if, after considering the record as a whole in the light most favorable to the agency, the reviewing court determines that a reasonable mind would necessarily come to a different conclusion. *Id.*

This is a high standard in favor of the Board. This standard, combined with the deference required, discussed *supra*, and the presumption of official regularity that exists in regard to agency actions, Va. Code § 9-6.14:17, amount to a preference in the law for leaving the actions of an agency undisturbed. These standards are designed to provide stability and finality to the actions taken by an administrative agency. *See, e.g., Bias*, 226 Va. at 269.

### Analysis

The General Assembly requires strict compliance with its statutory control measures as a condition for granting the privilege to sell alcoholic beverages in Virginia. Among these statutory control measures are provisions allowing the revocation of a license if ABC has reasonable cause to believe that any statutorily enumerated events, like those described in the charges made against Licensee and Applicant, have occurred on the premises of the licensee.

Viewed in the light most favorable to the Board, there is substantial evidence on the record to support the Board's findings of fact. The record reflects, and a reasonable mind would not necessarily come to a different conclusion than, that: (A) one Objector witnessed the sale of beer to a patron with an unsteady walk, a distinct smell of alcohol and who caused such a commotion, including brandishing a pistol, over a pack of cigarettes that the Licensee eventually gave him the cigarettes without charge; (B) several Objectors encountered patrons exiting Licensee's store with unsteady walks, slurred speech, and in one instance, apparently intoxicated to the point that he fell on a bottle of beer he had purchased and injured

himself badly enough to require medical assistance; (C) Objectors viewed patrons consuming alcohol while exiting the store; (D) Objectors saw patrons urinating on their property and/or in public; (E) some Objectors felt intimidated by the patrons and loiterers who congregated around the store. Even the Licensee characterized the patron who waved a pistol and got the cigarettes for free as a "regular customer" who is "always like that." It was reasonable, based on this evidence in the record, for the Board to conclude that beer sales to intoxicated patrons are not uncommon at this establishment. Licensee and Applicant argue about the interpretation of the testimony (i.e., when Objectors saw patrons drinking from a paper bag, they could not verify that it was an alcoholic beverage they were consuming). However, resolving all factual disputes in favor of the Board, as the VAPA requires, and deferring to the Hearing Officer and the Board for a determination of the credibility of the witnesses, it is not true that a reasonable mind would necessarily come to a different conclusion than the Board reached. As such, the Board's findings of fact concerning these issues are affirmed.

The charges made against the Licensee and the Applicant include two that are concerned with the location of the licensed store. Specifically, charge two, above, allows for the Board to act based on the location of the store being such that violation of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from the issuance of the license and operation thereunder by the licensee. Also, charge six allows the Board to act when the store is so situated with respect to residences that the operation under the license affects the real property values of the residences or substantially interferes with the usual quietude and tranquillity of such residences.

According to *Atkinson v. Virginia Alcoholic Beverage Control Comm'n*, 1 Va. App. 172 (1985), charges like these require, first that peace be breached or the quietude be disturbed, and second, that there be a nexus between the location of the store and the occurrence of the offense. *See also Muse v. Virginia Alcohol Beverage Control Bd.*, 9 Va. App. 74 (1989); *Branch v. Virginia Dept. of Alcoholic Beverage Control*, 21 Va. App. 242 (1995). It is not enough that the store is the location where the offense took place. *Atkinson*, 1 Va. App. at 177. There must be something about its location which causes the offense to be the natural result. *See Id.* Appellants argue that the facts do not support such a nexus. The court disagrees.

In the *Atkinson* case, there was no evidence on the record to establish such a nexus except the mere fact that the licensed establishment is where

the violations occurred. *Id.* In this case, on the other hand, the record reflects concerns about the neighborhood. The Board found that there was heavy pedestrian traffic to and from the establishment. Some of these pedestrians purchase single servings of alcoholic beverages from the Licensee and then drink them as they walk on the pedestrian path through the neighborhood. The litter and the public urination was along this path. That this pedestrian path exists by this location, and has contributed to the violations complained of, would be enough to affirm the Board in their decision to revoke this Licensee's license and not issue the Applicant a license. However, there is more evidence to support the Board's conclusions. There is a nearby bus stop and an alleyway down which people walk to get to their homes. There is another licensed establishment within five blocks of the one involved in this case, which might be a factor in the traffic flow. The appellants argue, in effect, that since they cannot control these external elements, they should not be held responsible. They are incorrect. The fact that there are characteristics of the location in which the licensed establishment is situated which contribute and cause the violations is precisely the circumstance these statutes and regulations were intended to address. The court finds that there is substantial evidence on the record that a causal nexus exists between the location of the store and the complained of violations. As such, the Board is affirmed on this finding, as well.

## Conclusion

When viewed in the light most favorable to the Board, resolving all factual disputes in their favor, there is substantial evidence on the record to support their findings. The supported findings concerning the issues appealed by Licensee include: (1) Licensee sold alcoholic beverages to intoxicated persons; (2) the establishment is located so as to disrupt the peace and good order of the area; (3) the Licensee allowed consumption of alcoholic beverages on their premises; and (4) the establishment is located so as to disrupt the usual quietude and tranquillity of the surrounding residential neighborhood. The supported findings concerning the issues appealed by Applicant include: (1) the establishment is so located that the issuance of the license would disrupt the peace and good order of the area; (2) the establishment is so located that the issuance of the license would disrupt the usual quietude and peace of the surrounding residential neighborhood; and (3) Applicants have and would, if issued a license, operate a

noisy and disorderly establishment. All of these findings are affirmed. As such, the Board's actions in revoking the license held by Licensee and denying a license to Applicant are affirmed.