# Richmond.

## City of Portsmouth v. Virginia Railway and Power Company.   Record No. 1244.

### January 15, 1925.

1. Street Railways—*Municipal Corporation—Consent of City to Use of Streets—Conditions.*—Where a street railroad is prohibited from occupying the streets of a city without the consent of the council, the power to give such consent necessarily implies the right to refuse it, and this in turn implies a power to attach appropriate conditions thereto; among which are conditions which are suggested by the changes in the surface of the streets directly caused by the new construction.

2. Street Railways—*Municipal Corporation—Consent of City to Use of Streets—Condition that Railway Pay Cost of Repavement of Portion of Street.*—As the construction and operation of a railway in the streets of a municipality increases the congestion and the consequent danger of accidents therein for which the city may be held liable, it is quite reasonable to require the street railway company, to which such a franchise or privilege is granted, to bear a part of the expense of keeping the streets over which it operates in a reasonably safe condition. For this reason, among others, requirements that street railways shall bear the cost of paving and repaving between the rails of its tracks and for two feet on the sides thereof have been almost universally imposed and upheld.

3. Street Railways—*Cost of Paving and Repaving—Sections 4061 and 4038 of the Code of 1919.*—Under sections 4061 and 4038 of the Code of 1919, electric railways may be required by a city, consenting to their construction and operation in its streets, to pay the entire cost of paving and repaving between the rails of its tracks and for two feet on the sides thereof.

4. Street Railways—*Relief Against Paving Contracts with Municipalities—Jurisdiction of Corporation Commission.*—If a city and street railway company in making an agreement that the street railway company should bear part of the expense of paving and repaving the street were contracting with reference to the public duties of the street railway company, such contracts, being subject to the police power of the State, may generally be abrogated by a commission

legally authorized to regulate or control public service corporations. But if such paving contracts are outside of the public duties of the street railway company, and there is no authority vested in such commission, except to supervise and regulate such companies with reference to such public duties, the Commission has no jurisdiction to relieve the company from the obligation of its contract.

5. MUNICIPAL CORPORATIONS—*Power of State—Abrogation of Contracts—State Corporation Commission.*—If there be a contract between the municipality as agent of the State and a public service corporation, the State, of which the municipality is the mere agent, may itself agree with the company to abrogate or modify such contracts. This rule, however, is not self executing, and unless the Corporation Commission has been authorized to exercise this power of the State, and empowered to abrogate a paving contract between a municipality and a street railway company, it exceeds its jurisdiction when it attempts to abrogate such contract.

6. CORPORATION COMMISSION—*Jurisdiction—Confined to Public Duties of Public Service Corporations.*—A careful scrutiny of section 156-b of the Constitution of 1902 and of all of the statutes of the State conferring jurisdiction upon the Commission, shows conclusively that the powers of the Commission relate only and always to the performance of the public duties of public service corporations. They do not relate to the public duties of municipalities. The jurisdiction is not conferred by the mere fact that the subject may be of interest to the public. Only the obligations and duties imposed by law upon these public utility corporations are subjected to the supervision and control of the Commission.

7. CORPORATION COMMISSION—*Powers—Jurisdiction.*—The Corporation Commission has no inherent power; but all of its powers are derivative and must be based either on the Constitution, or upon statutes passed pursuant thereto. Of course, this is not to say that these provisions should receive such a narrow construction as would lead to the defeat of their main purpose. The construction on the contrary should be liberal, and every power expressly granted, or fairly implied from the language used, or which is necessary to enable the Commission to exercise the powers expressly granted, should and must be accorded.

8. CORPORATION COMMISSION—*Street Railways—Relief of Street Railway from the Obligation of Paving Contract with a City.*—The duty of a street railway company under the franchise granted it by the city to pay the cost of paving and repaving between the rails of its tracks, and for two feet on the sides thereof, is not a public duty of the company, and hence is not subject to the supervision and control of the Corporation Commission, and the Commission is without jurisdiction to relieve the company of the obligation of the paving contract. The company could run its cars and perform every public duty imposed upon it without any reference to the paving of the street.

9. Corporation Commission—*Street Railways—Relief of Street Railway from the Obligation of Paving Contract with a City.*—It is undoubtedly true that such paving ordinances as still exist in these days of electric street railways constitute heavy burdens upon such companies which are doubtless in most instances unjust, however appropriate their imposition may have been in days of horse drawn street cars, when their use by the company necessitated constant repairs of the streets. It may be that the State should, for the public interest, empower the Commission to relieve some of the street railway companies from some of their paving obligations, but for this relief the appeal must be made to the General Assembly. Neither the Commission nor the court has been vested with this sovereign legislative power, and cannot make but can only declare the law.

Appeal from an order of the State Corporation Commission.

*Reversed.*

The opinion states the case.

*R. C. Barclay* and *John W. Happer*, for the appellant.

*E. Randolph Williams, W. H. Venable, Frank L. Crocker, R. E. Miller* and *T. Justin Moore*, for the appellee.

Prentis, J., delivered the opinion of the court.

The Virginia Railway and Power Company filed its petition with the State Corporation Commission, praying for relief from the obligation imposed upon it by the franchise granted to it and its predecessors by the city of Portsmouth, requiring the company to pay the entire cost of paving and repaving between the rails of its tracks, and for two feet on the sides thereof. The franchise to the present company, granted in July, 1913, provides that at any time after a period of ten years from the date of the franchise, upon notice from the city council, the company should do the specified

paving.   The company, in July, 1923, having been re-
quested by the council of the city to do the paving re-
quired by the ordinance, then filed its petition, to
which the city filed its demurrer, denying the jurisdic-
tion of the Commission, which contention being over-
ruled, the order from which this appeal was taken was
entered.   This order relieves the company from the
obligations of this paving agreement as to certain
streets, subject to the qualification, however, that the
Commission might require the paving or any part of it
to be done should it appear at any future time that the
earnings of the Portsmouth division of the company
would justify the making of such expenditures.

[1, 2] The prohibition against occupying the streets
of the city of Portsmouth without the consent of the
council is found in the charter of the company, the
charter of the city, the Constitution and the general
law.   This power to give such consent necessarily im-
plies the right to refuse it, and this in turn implies a
power to attach appropriate conditions thereto; among
which are conditions which are suggested by the changes
in the surface of the streets directly caused by the new
construction.   *Georgia R. R. Co.* v. *Railroad Com-
mission*, 149 Ga. 1, 98 S. E. 696, P. U. R. 1919-D. 546,
5 A. L. R. 6; *St. Louis R. Co.* v. *Kirkwood*, 159 Mo. 239,
60 S. W. 110, 53 L. R. A. 300.   Certainly among such
conditions are those arising out of the legal responsi-
bilities of the municipality.   Among these specifically
and obviously is the duty to exercise reasonable care to
maintain its streets in a reasonably safe condition so as
to avoid injuries to travelers thereon.   So that as the
construction and operation of the railway in the streets
increases the congestion and the consequent danger of
accidents therein for which the city may be held liable,
it is quite reasonable to require the company to which

such a franchise or privilege is granted to bear a part of the expense of keeping the street in such a reasonably safe condition. For this, among other reasons, such requirements have been almost universally imposed and upheld.

[3] In this State there is also legislative authority for imposing them. Code section 4061, referring to electric railways, subjects them in terms to the provisions of Code sections 4035, 4036, 4037 and 4038, as far as practicable, and section 4038 concludes thus: "Notwithstanding the provisions of this chapter, the corporate authorities of any city or town may impose upon any such corporation any terms and conditions inconsistent herewith or supplemental hereto, as to the occupation and use of its parks, streets, avenues, and alleys, and as to the construction and maintenance of its works along, over or under the same, the corporate authorities may deem expedient and proper." It is true that this section is in the chapter relating to telegraph and telephone companies, and the preceding part of the section refers directly to posts, poles and heights of wires, and fails to refer specifically to street paving; but as has been just stated, Code section 4061 makes this section 4038 expressly applicable to street railway companies. These sections are the latest legislative expression as to the general power of cities to impose terms upon public utility companies who seek consent to occupy the streets.

[4] The argument for the company is based upon the contention that the city and the company, in making this agreement, were contracting with reference to the public duties of the company. If they were, then the overwhelming weight of authority is to the effect that such contracts being subject to the police power of the State, may generally be abrogated by a commission

legally authorized to regulate or control public service corporations. This qualification, however, is decisive in such cases, for if such paving contracts are outside of and unrelated to the public duties of the company, and there is no authority vested in the Commission, except to supervise and regulate such companies with reference to such public duties, then the premise having failed the whole argument falls.

[5] Much emphasis is also laid upon the rule that even if there be a contract between the municipality as agent of the State and a public service corporation, the State, of which the municipality is the mere agent, may itself agree with the company to abrogate or modify such contracts. It may be conceded that this rule is established, but it is not self executing, and unless the Commission has been authorized to exercise this power of the State and empowered to abrogate the contract here involved it has exceeded its jurisdiction.

The company relies upon section 156-b of the Constitution, and numerous statutes. passed by authority thereof, which confer upon the Commission very large powers—indeed, it may be no exaggeration to say almost unlimited powers—to act for the State upon the subjects thereby committed to it.

So much of that section of the Constitution as is relevant reads thus:

"The Commission shall have the power, and be charged with the duty, of supervising, regulating and controlling all transportation and transmission companies doing business in this State, in all matters relating to the performance of their public duties and their charges therefor and of correcting abuses therein by such companies; and to that end the Commission shall from time to time prescribe and enforce against such companies, in the manner hereinafter authorized,

such rates, charges, classifications of traffic and rules and regulations, and shall require them to establish and maintain all such public service, facilities and conveniences, as may be reasonable and just, which said rates, charges, classifications, rules, regulations and requirements, the Commission may, from time to time, alter and amend * * * it (the Commission) shall keep itself fully informed of the physical condition of all the railroads of the State, as to the manner in which they are operated, with reference to the security and accommodation of the public. * * * The authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges and classifications of traffic, for transportation and transmission companies, shall be paramount; but its authority to prescribe any other rules, regulations or requirements for corporations or other persons shall be subject to the superior authority of the General Assembly to legislate thereon by general laws; provided, however, that nothing in this section shall impair the right which has heretofore been, or may hereafter be, conferred by law upon the authorities of any city, town or county to prescribe rules, regulations, or rates of charge to be observed by any public service corporation, in connection with any service performed by it under a municipal or county franchise granted by such city, town or county, so far as said services may be wholly within the limits of the city, town or county granting the franchise." * * *

[6, 7] A careful scrutiny of this language, and of all of the statutes of the State conferring jurisdiction upon the Commission, shows conclusively that the powers of the Commission relate only and always to the performance of the public duties of such public service corporations. They do not relate to the public duties of municipalities. The jurisdiction is not conferred by

the mere fact that the subject may be of interest to the public. Only the obligations and duties imposed by law upon these public utility corporations are subjected to the supervision and control of the Commission. In the words of the section quoted, which confers the power upon the Commission, it is "to that end," namely, to require the performance of their public duties, that the Commission is authorized from time to time to prescribe and enforce against such companies rules, regulations, rates, the maintenance of such public service, facilities and conveniences as may be reasonable and just. That idea—the requirement of adequate service due by such companies to the public—is the inspiration and only justification of all of such laws. As has been heretofore said, the Commission has no inherent power, but all of its powers are derivative and must be based either on the Constitution, or upon statutes passed pursuant thereto. Of course, this is not to say that these provisions should receive such a narrow construction as would lead to the defeat of their main purpose. The construction, on the contrary, should be liberal, and every power expressly granted, or fairly implied from the language used, or which is necessary to enable the Commission to exercise the powers expressly granted, should and must be accorded.

[8] With this fair construction in mind, we find it impossible to follow the Commission in its conclusion that this duty of paving is a public duty of the company, and hence subject to the supervision and control of the Commission. The company could run its cars and perform every public duty imposed upon it without any reference to the paving of the street; in fact, it is a matter of common knowledge that such railways outside of the municipalities do operate upon the unpaved highways. The paving then is not a facility of the

company—that is, it is not an instrumentality which is convenient or required by the company in order to perform its duties. It is not a service to its passengers, who have no interest, as travelers, in the smoothness of the street itself, but only in the rails upon which the cars run.

The precise question (as to street paving obligations), while new in this jurisdiction, has been elsewhere considered, and as we understand the authorities the views which we have already indicated prevail.

For instance, in *Borough of Swarthmore* v. *Public Service Commission*, 277 Pa. 472, 121 Atl. 488, P. U. R. 1923-E, 367, this appears: The Pennsylvania Commission entered an order relieving a street railway company from compliance with the paving condition of an ordinance. The case was taken first to the superior court and thence to the Pennsylvania Supreme Court, and the order of the Commission was reversed. The contract was as clear as it is here. The burden upon the company was heavy, as it is here, but the court could not find in the Pennsylvania statutes any power to enter or enforce such orders. The jurisdiction of the Commission there, while conferred by statute, appears to be equally as comprehensive as it is here, though here it is conferred by Constitution as well as by statute. The Commission there had the power to regulate rates, service and facilities of public service corporations, and it had jurisdiction over service, facilities, rules, regulations and practices of such corporations. The statute there thus defines service: "The term 'service' is used in this act in its broadest and most inclusive sense, and includes any and all acts done, rendered or performed, and any and all things furnished or supplied, and all and every the facilities used or furnished or supplied by public service companies in the performance of their

duties to their patrons, employees, and the public, as well as the interchange of facilities between two or more public service companies." Pa. St. 1920, §18057. And in this connection, service is thus described by the court: "Service moves from the company, has relation to its duty, and, while dependent on rates, the two must not be confused. Service is what the patron gets and pays for. The rate is the consideration that the company receives for the service. As service is understood and defined, by no stretch of the imagination can this contract be considered service or any of its allied elements." It is in that case conceded that the legislature of the State, through its police power, could reach such a contract as this, especially as it is made by one of its own creatures, a municipality; but it is there also decided that such general language conferring on the Commission the very largest powers over the public utility companies as to their public duties is insufficient to authorize it to modify or annul such a contract.

In *re Pacific Electric Railway Co.*, P. U. R. 1918-C, 315, the California Commission authorized the abandonment of street railway tracks in preference to authorizing a large expenditure for the purpose of paving a portion of the line to meet the requirements of a city ordinance, it appearing that the traffic was too light to pay operating expenses, and that the company was already operating under a deficit without hope of recovering.

In *re Santa Barbara and Suburban Ry. Co.*, P. U. R. 1921-A, 750, the California Commission, under similar circumstances, found that it was without jurisdiction to relieve the company of the obligation of a paving contract, and because without jurisdiction authorized the company to increase its fares and to eliminate certain duplicate service.

So in North Carolina, in *re Carolina Power & Light Co.*, P. U. R. 1922-A, 327, the right of the city of Raleigh to impose upon the railway company an additional expenditure of $35,000.00 for street paving is recognized, and because of this burden the Commission authorized the company to increase its fares.

In *re City of Sault Ste. Marie*, P. U. R. 1922-D, 14, the Michigan Commission, apparently conceding that it had no jurisdiction to relieve the company from the obligations of street paving, entered an order authorizing the company to cease the operation of its street railway lines on July 15, 1922, unless prior to that time the city should amend the franchise under which the company was operating so as to relieve it of a portion of the expense of such paving.

In *State, ex rel. Tacoma R. & P. Co.* v. *Public Service Commission*, 101 Wash. 601, 172 Pac. 890, P. U. R. 1918-E, 277, the Supreme Court of Washington had the question before it under a statute (Laws 1911, p. 571, §53) vesting the Commission with power to fix rates and charges and to enforce proper regulations and practices, and also providing specifically as follows: "Whenever the Commission shall find, after such hearing, that the rules, regulations, practices, equipment, appliances, facilities or service of any such common carrier in respect to the transportation of persons or property are unjust, unreasonable, unsafe, improper, inadequate or insufficient, the Commission shall determine the just, reasonable, safe, adequate, sufficient and proper rules, regulations, practices, equipment, appliances, facilities or service to be observed, furnished, constructed or enforced and be used in the transportation of persons and property by such common carrier, and fix the same by its order or rule as hereinafter provided." It was, in that case, held that the Com-

mission had no power to modify such a paving contract, or to relieve the company of its obligations thereby assumed, and the court refers in its opinion to the fact that bills extending the scope of the Commission which had been introduced in the legislature, giving express power to grant, modify or revoke and generally regulate the terms and provisions of such permit, license or franchise, had not been enacted. (This is said to be also true here.) Certainly the language of the statute in Washington is as comprehensive as that used in the Constitution or statutes of this State, and the construction there placed upon the statute appears to be sound.

In *Northern Illinois Light & T. Co.* v. *Illinois Commerce Commission*, 302 Ill. 11, 124 N. E. 143, this is said: "As long as the appellant continues to operate any part of its sytem in the streets of Ottawa, its obligation to pave whenever the streets are paved on which its line is in operation is undoubtedly a binding one, but it cannot be required to continue the operation of its system and pave the streets where such continuous operation would amount to a confiscation of its property."

The company appears to rely with some confidence upon the case of *Springfield* v. *Springfield Street Ry. Co.*, 182 Mass. 41, 64 N. E. 577. The difference between that case and this is apparent. There a statute was passed in 1898 (St. 1898, c. 578, §11) which abrogated the obligations theretofore imposed upon street railway companies as to the repair of highways. The court, in substance, said that such locations are not contracts between the city or town and the railway company, but are in the nature of licenses to use public ways; so it was held that even if such locations constitute contracts, they are of such a nature that the legislature can modify or annul them without violating the constitu-

tional provision; and used this language: "So far as the city is concerned, it must be deemed to have acted in behalf of the public and not in virtue of any private or proprietary rights, and the legislature has the same right to modify or abrogate the conditions on which locations in the streets and public ways have been granted that it would have if such conditions had been originally imposed by it. *New Orleans* v. *New Orleans Water Works Co.*, 142 U. S. 70 (35 L. Ed. 943, 12 S. Ct. 142)." *Pawhuska* v. *Pawhuska O. & G. Co.*, 250 U. S. 394, 39 S. Ct. 526, 63 L. Ed. 1054; *Trenton* v. *New Jersey*, 262 U. S. 182, 43 S. Ct. 534, 67 L. Ed. 937, 29 A. L. R. 1471.

This statute was also involved in *Worcester* v. *Worcester Consolidated Street Ry. Co.*, 196 U. S. 539, 25 S. Ct. 327, 49 L. Ed. 591, and the same construction which the Massachusetts court had given it was approved by the Supreme Court of the United States, and this is said: "The question then arising is whether the legislature, in the exercise of its general legislative power, could abrogate the provisions of the contract between the city and the railroad company with the assent of the latter, and provide another and a different method for the paving and repairing of the streets through which the tracks of the railroad company were laid under the permit of their extended location. We have no doubt that the legislature of the Commonwealth had that power. A municipal corporation is simply a political subdivision of the State, and exists by virtue of the exercise of the power of the State through its legislative department. The legislature could at any time terminate the existence of the corporation itself, and provide other and different means for the government of the district comprised within the limits of the former city. The city is the creature of the State." Many

pertinent cases clarifying and emphasizing this doctrine as to this relation of the city and the State are there cited.

We are also referred to the case of *Indianapolis St. Ry. Co.* v. *Indianapolis*, P. U. R. 1922-E, 545, as supporting the order of the Commission, but that case, too, is easily distinguished. There the General Assembly passed a statute which authorized the street railway company, after taking certain steps provided by law, to surrender all of its franchises which it had previously received from the city, and to take in lieu thereof by operation of law an indeterminate permit as provided by section 101 of the public utility law of the State of Indiana (Laws 1913, C. 76). The company accepted the provisions of this statute and was operating thereunder. Subsequent to such surrender by the company of all of its franchises pursuant to that statute, the common council of Indianapolis undertook to revive a franchise obligation which had previously rested upon the street railway company to do a certain amount of paving. The Commission held that the city had no such power, saying that the company, by accepting the indeterminate permit, entered into a new and binding contract with the State of Indiana, and no longer could it be held to be subject to the requirements of any obligation created or imposed by its franchise with the city of Indianapolis which it had surrendered.

Neither of these cases can be followed here, for the very obvious reason that the State of Virginia has neither by Constitution nor statute either abrogated or sought to abrogate these paving contracts, or to relieve the company from its obligations thereunder. Hence they are obligatory.

[9] It is undoubtedly true that such paving ordinances as still exist in these days of electric street railways con-

stitute heavy burdens upon such companies which are doubtless in most instances unjust. However appropriate their imposition may have been in days of horse drawn street cars, when their use by the company necessitated constant repairs of the streets, these conditions no longer exist, and the burdens imposed upon an electric company using the streets should doubtless be lighter, because, except for slight necessary repairs, the operation of cars upon the rails belonging to the company does not wear the street surface. It may be that in the evolution of transportation problems the time has come when the State should, for the public interest, empower the Commission to relieve some of the street railway companies from some of their paving obligations, but for this relief the appeal must be made to the General Assembly. Neither the Commission nor the court has been vested with this sovereign legislative power, and cannot make but can only declare the law.

Our conclusion then is that the order is erroneous.

*Reversed.*