## Alexandria

## LEONARD MUSE

v.

## VIRGINIA ALCOHOL BEVERAGE CONTROL BOARD

No. 0865-87-4

Decided September 12, 1989

COUNSEL

Norman Baum, for appellant.

Donald Lahy, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BENTON, J.**—Leonard Muse appeals from a final order of the circuit court affirming the Alcohol Beverage Control Board's decision to restrict Muse's retail beer and wine off premises license so as to forbid the chilling of alcoholic beverages in the Green Valley Pharmacy, Muse's place of business. Muse argues (1) that the

ABC Board lacked authority under the statute to restrict his license in this manner; and (2) that the decision to restrict his license is not supported by substantial evidence. For the following reasons, we affirm the decision.

Muse was issued a retail wine and beer off premises license for the Green Valley Pharmacy in 1975. In response to a complaint from Joan Cooper, a community service aid for the Arlington County Police Department, the ABC Board issued a notice of hearing in 1986 to determine whether Muse's alcohol license should be suspended or revoked. The notice charged that cause existed which would entitle the ABC Board to refuse to issue a license. In particular, the notice charged violations of Code §§ 4-31(a)(2)(b), 4-31(a)(2)(c), 4-31(a)(2)(d), 4-34(d), and 4-37(A)(3) in that the Pharmacy:

(1) is so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from issuance of the license;

(2) is so situated with respect to residences that the operation of [the Pharmacy] under the license has adversely affected the real property values or substantially interfered with the usual quietude and tranquility of such residences;

(3) is so situated with respect to a school that the operation of [the Pharmacy] under the license has adversely affected or interfered with normal, orderly conduct of the affairs of [the school].

These same charges were leveled against three other nearby establishments, L & L Restaurant and Carry Out, Super Food Store, and the Shirlington Grocery and Carry Out, all of which are located near the intersection of Shirlington Road and 24th Street.

The record before the ABC Board established that the targeted area, commonly referred to as "the corner," is, and has been for many years, a popular neighborhood meeting ground in the Nauck/Green Valley Community of South Arlington. Community residents testified before the hearing officer that crime problems in the vicinity of "the corner," while historically bad, have worsened in recent years. According to arrest statistics for 1986 compiled by Lieutenant Karinshank of the Arlington County Police Department, the area within the three block radius from "the corner"

accounts for a disproportionate number of crimes when compared with other areas of the County. Karinshank testified that a significant amount of drinking in public and drug dealing occurred in front of the establishments near "the corner."

The Green Valley Task Force was set up in 1985 in an attempt to counteract the rising level of crime near "the corner." Corporal Gavin, a member of the Task Force, testified that most of the arrests he made near "the corner" were alcohol related. Gavin testified that he observed people loitering for hours, periodically venturing into the stores. He testified that many of those persons "[w]ould come out with a brown bag wrapped around what appeared to be a can and we would watch them and they would drink from it. We would stop them and find it to be alcohol and issue a summons for drinking in public." In Gavin's opinion, the ready availability of alcohol from the establishments lured crowds and facilitated drug operations, which occurred in the alleys behind the buildings.

A young resident of the community corroborated Gavin's testimony, stating: "[Y]ou can sit right there in front of the establishments and do all types of things and then run in and get a fill up of alcohol, you know, beer or wine and then come right back out and stand there all day. You know it's just easy access. It's like a club on the street." The resident further testified that when one establishment closed, groups would migrate to the next establishment and continue to drink, socialize, and engage in illicit activities.

The Drew Model School, an elementary school and adult community center, is located two blocks from "the corner." The school's principal testified concerning litter and debris from alcoholic beverages consumed on school property, broken glass in the roadways and play areas, and other continuous problems associated with persons from "the corner" drinking on school grounds. Other residents described the abundance of beer cans, bottles, and drug paraphernalia on neighborhood walkways. They described occasionally seeing vomit on their walkways and testified concerning encounters with individuals urinating on the streets.

After hearing the testimony of numerous witnesses for both the complainants and the licensees, the hearing officer concluded that the charges against the four establishments were substantiated.

The hearing officer issued a decision prohibiting the chilling of alcoholic beverages in those establishments for off premises consumption. On appeal, the ABC Board upheld the decisions of the hearing officer. Three of the establishments further appealed the ABC Board's decision to the circuit court. From the judgment of the circuit court affirming the ABC Board's decision, Muse appeals to this Court.

■ Code § 4-37(D) directs that our review shall be "in accordance with the provisions of the Administrative Process Act (§ 9-6.14:1 *et seq.*)." *See also Atkinson v. ABC Commission*, 1 Va. App. 172, 176, 336 S.E.2d 527, 529 (1985). The question whether an agency decision making body acted within the scope of the authority conferred upon it by statute is a question of law. Code § 9-6.14:17; *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). We initially address this question of law because Muse first contends that the Board acted outside the scope of its authority in restricting his license. He argues that the specific authority to grant, refuse, revoke or suspend licenses pursuant to Code §§ 4-25, 4-31 and 4-37 does not include the authority to restrict the use of a license in the manner accomplished here. We disagree.

■ The ABC Board, being a creature of statute, derives its powers from statute. *See Portsmouth v. Virginia Railway & Power Co.*, 141 Va. 54, 61, 126 S.E. 362, 364 (1925). The statutory grant of power is not strictly limited, however, to the narrow confines of the express language of the statute. "[E]very power expressly granted, or fairly implied from the language used, or which is necessary to enable [the Board] to exercise the powers expressly granted, should and must be accorded." *Id.*; *see also Fairfax County v. Miller & Smith, Inc.*, 222 Va. 230, 237, 279 S.E.2d 158, 162 (1981).

■ Code §§ 4-31(a)(2)(b), 4-31(a)(2)(c), and 4-31(a)(2)(d) empower the ABC Board to refuse to grant a license when it concludes that the place to be occupied is "so located" that "violations of . . . laws . . . relating to peace and good order" would result; or the place "is so situated" with respect to a school, church, hospital, playground or other facility that retail operations "will adversely affect or interfere with the normal, orderly conduct of the affairs of such facilities or institutions;" or that the place "is so situated" with respect to a residential area that retail opera-

tions "will adversely affect or . . . interfere with the usual quietude and tranquility" of the area. Code § 4-37 (A)(3), which authorizes the ABC Board to suspend or revoke the license upon reasonable cause to believe "[t]hat any cause exists for which the Board would have been entitled to refuse to issue such license had the facts been known," in essence incorporates Code § 4-31. In addition, the statutory grant of authority explicitly provides that, though issued, the license is nevertheless subject to periodic scrutiny. Code § 4-34(d). "[P]rovided that no cause exists for which the Board would be entitled to refuse to issue a license," the privileges conferred thereunder will continue from year to year. *Id.* Thus, although the ABC Board may have granted the license, the statutory scheme allows it to continue to monitor the effect of the license on the community and to revoke those privileges initially granted if the impact of lawful operation of the licensed establishment proves sufficiently adverse to justify revocation.

■ Implicit in the ABC Board's authority to revoke a license under Code § 4-37(A)(3), upon reason to believe that cause exists for which the Board would have been entitled to refuse a license under Code §§ 4-31(a)(2)(b), (c) or (d) had the facts been known, is the ability to exercise the lesser power to restrict the license in accordance with the purposes of the act. *See Taylor v. Smith*, 140 Va. 217, 230, 124 S.E. 259, 263 (1924); *see also Kochendorfer v. Bd. of County Comm'rs*, 566 P.2d 1131, 1135 (Nev. 1977). The reasonableness of conditions imposed by the ABC Board should be judged according to the statutory purpose the conditions are designed to effectuate. *See* Code § 4-7; *see also G. L. & R. Realty Corp. v. State Liquor Authority*, 356 N.Y.S.2d 994, 997 (1974). Thus, we must decide whether restricting Muse's license against the chilling of alcoholic beverages for off premises consumption was both reasonable and justified. We conclude that it was.

■ Our review of the ABC Board's conclusion that reasonable cause existed to believe that violations of Code §§ 4-31(a)(2)(b), (c), and (d) had occurred is limited to ascertaining whether substantial evidence supports the conclusion. Code § 9-6.14:17. In reviewing factual issues, we must "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." *Id.*; *see also Virginia ABC*

*Comm'n v. York Street Inn, Inc.*, 220 Va. 310, 313, 257 S.E.2d 851, 853 (1979).

In *Atkinson*, a panel of this Court, construing Code § 4-31 (a)(2)(b), noted that "location, in and of itself, must be a relevant factor" in determining whether the establishment " 'is so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from issuance of the license and operation thereunder.' " 1 Va. App. at 177, 336 S.E.2d at 530. This observation applies with equal force to violations of Code §§ 4-31 (a)(2)(c) and (d). In other words, there must be a causal nexus between the interference complained of and the situs of the licensed establishment. *Atkinson* also acknowledges that under Code § 4-31 (a)(2)(b), the Board must find "that violations of the ABC Act or other laws of the Commonwealth relating to peace and good order have taken place at the establishment in question." *Id.* In *Atkinson*, the Court assumed that the evidence was sufficient to meet this latter requirement, but found that the commission had failed to connect the occurrence of those violations to the location of the establishment. *Id.* Although Muse argues that *Atkinson* limits the Board's authority to act to violations which occur "inside" the licensed establishment, we do not read *Atkinson* so narrowly. Indeed, the statute itself merely requires that the establishment be "so located that violations . . . relating to peace and good order would result from the issuance of such license." Code § 4-31(a)(2)(b).

Substantial evidence was presented in this case which gave the ABC Board reasonable cause to believe that circumstances had developed which, if known, would have entitled the ABC Board to refuse to grant Muse's license at the outset. The record establishes that "the corner" serves as a "club on the street" for groups of people who congregate and loiter outside the licensed establishments. The record gives reasonable cause to believe that the disproportionate number of alcohol related offenses occurring in the vicinity of "the corner" stemmed from the easy access to chilled alcoholic beverages which could be procured from the licensed establishments and immediately consumed. The testimony of numerous area residents, including the school principal, further demonstrates that the neighborhood and its institutions were adversely affected by these alcohol related abuses. Thus, the ABC Board's conclusion that the circumstances warranted restricting Muse's li-

cense was not in error.

We also conclude, from a review of both the record and the purpose of the basic law under which the ABC Board acted, that the restriction imposed on Muse's license was reasonably related to the purpose it was designed to effectuate — the deterrence of immediate consumption of alcoholic beverages on the street corner. In invoking this restriction, the ABC Board tailored the remedy to allow Muse to retain his license, while at the same time addressing the particular problems raised in the community by the sale of cold wine and beer for off premises consumption. In balancing these considerations, the ABC Board appropriately applied its expertise and discretion in reaching a sound decision. Accordingly, we affirm its decision.

*Affirmed.*

Duff, J., and Keenan, J., concurred.