## CIRCUIT COURT OF THE CITY OF NORFOLK

Thornton Hall, Inc.

v.

Patrick Finnerty,
Director of the Department
of Medical Assistance Services

March 20, 2003

Case No. (Chancery) 02-591

BY JUDGE JOHN C. MORRISON, JR.

This issue comes before the Court on appeal from the final decision of the Director of the Department of Medical Assistance Services ("DMAS") concerning alleged overpayments made to Thornton Hall from 1991 until 1999. Appellees DMAS and Patrick Finnerty, Director of DMAS, (hereinafter "Appellees" or "DMAS") assert that Thornton Hall, Inc., owes it for various payments it made to the providers managing Thornton Hall, the nursing home, during those years. Appellant Thornton Hall, Inc., asserts that the decision of the Director should be reversed for two reasons. First, Appellant asserts that Appellees cannot collect for any overpayment prior to July 6, 1997, because an initial determination by DMAS in the form of the decision after an initial fact finding conference ("IFFC") must be made within four years of the overpayment or DMAS is barred from recovering the overpayment amount. Pet. for Appeal ¶¶ 30-33. Second, Appellant asserts that DMAS cannot collect overpayments to other providers from Thornton Hall, Inc. The director found for DMAS on both issues. *Id.* at ¶¶ 38-45. For the reasons stated below, the Court reverses the decision of the Director on the first issue and affirms the decision of the Director on the second issue. DMAS may collect overpayment from July 6, 1997, through the end of FYE 1999.

Gerald F. Rowe owns Thornton Hall, which he originally purchased from Norfolk Community Nursing Center, Inc., on March 4, 1992. Stipulated Facts ¶ 1, at R. 322. Gerald Rowe then leased the property to Thornton Hall, Inc., for operation as a nursing facility. *Id.* Effective July 1, 1995, Thornton Hall, Inc., and Gerald Rowe leased the facility to a third party, Multicare. Pet. for Appeal ¶ 21; Appellee's Answer and Mot. to Dismiss ¶ 21 (hereinafter "Answer"). Genesis Health Center ("Genesis") later acquired Multicare and continued to operate Thornton Hall as a nursing facility. Pet. for Appeal ¶ 22; Answer ¶ 22. However, Genesis stopped operating the facility on May 31, 2000, and Thornton Hall, Inc., stepped in to run the facility on June 1, 2000. Pet. for Appeal ¶ 23; Answer ¶ 23. Appellant claims that it was forced to take over the facility because Genesis prematurely breached its lease. Pet. for Appeal ¶ 23. During all times relevant to this appeal, the provider operating Thornton Hall had a valid provider agreement with DMAS, the administrator of the Medicaid program in Virginia. Pet. for Appeal ¶ 2; Answer ¶ 2. When Thornton Hall, Inc., began operating the facility in June 2000, the company applied for a new license and requested from DMAS a new provider number. Pet. for Appeal ¶ 24. DMAS assigned Genesis's provider number to Thornton Hall, Inc., instead of assigning the company a new provider number. Pet. for Appeal ¶ 26.

## Discussion

### Standard of Review — Final Agency Decision

"The burden shall be on the party complaining of agency action to designate and demonstrate an error of law subject to review by the court." Va. Code Ann. § 2.2-4027 (2002).

> Such issues of law include: (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

*Id.* The question whether an agency acted within the scope of the authority conferred on it by law is a question of law. *Fairfax Surgical Ctr., Inc. v. State*

*Health Comm'r*, 12 Va. App. 576, 579, 405 S.E.2d 430, 432 (1991) (citing *Muse v. Alcohol Beverage Control Bd.*, 9 Va. App. 74, 78, 384 S.E.2d 110, 112 (1989)). In addition, when the issue is one of statutory interpretation, "little deference is required to be accorded the agency decision." *Id.* (quoting *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 246, 369 S.E.2d 1, 9 (1988)); *see also Smith v. Liberty Nursing Home, Inc.*, 31 Va. App. 281, 293, 522 S.E.2d 890, 896 (2000). The issues on appeal in this case are issues requiring statutory interpretation by the Court. Therefore, the Court is not required to defer to the agency's decision in this case.

*Issue # 1: What is an "initial determination"?*

> The Director of Medical Assistance Services shall collect by any means available to him at law any amount owed to the Commonwealth because of overpayment for medical assistance services. Upon making an initial determination that an overpayment has been made to the provider pursuant to § 32.1-325.1, the Director shall notify the provider of the amount of the overpayment. Such initial determination shall be made within the earlier of (i) four years, or (ii) fifteen months after filing of the final cost report by the provider subsequent to sale of the facility or termination of the provider. The provider shall make arrangements satisfactory to the Director to repay the amount due. If the provider fails or refuses to make arrangements satisfactory to the Director for such repayment or fails or refuses to repay the Commonwealth for the amount due for overpayment in a timely manner, the Director may devise a schedule for reducing the Medicaid reimbursement due to any successor in interest.

Va. Code Ann. § 32.1-325.1:1(B) (2002). It is under this statute that DMAS is seeking to recover monies from Appellant, Thornton Hall, Inc. Appellant asserts that DMAS cannot collect for any amounts received prior to July 6, 1997, because no initial determination was made in this case prior to July 6, 2001. Pet. for Appeal ¶ 33. The Court finds that the clear language of the statutory section quoted above indicates that there must be an IFFC before there can be an initial determination. DMAS asserts that a Notice of Program Reimbursement (NPR), the initial letter sent by DMAS to nursing facilities after DMAS makes its audit determination, is the initial determination referred to in the Code. For support, DMAS points to *Smith v. Liberty Nursing Home,*

*Inc.*, in which the Court of Appeals of Virginia held that the statute's four-year limitation was mandatory. 31 Va. App. 281, 291, 522 S.E.2d 890, 895 (2000). DMAS points out that the initial determinations in that case were NPRs. However, the *Smith* court did not address the definition of "initial determination," and there was no determination that "initial determination" meant the NPR.

Section 32.1-325.1 of the Code of Virginia defines initial determinations as decisions to be made pursuant to the informal fact finding procedures of § 2.2-4019: "The Director shall make an initial determination as to whether an overpayment has been made to a provider in accordance with the state plan for medical assistance, the provisions of § 2.2-4019, and applicable federal law." Va. Code Ann. § 32.1-325.1(A) (2002). Section 2.2-4019 sets out the procedures for the informal fact finding conference. Subsection (B) states, "An appeal of the Director's initial determination concerning provider reimbursement shall be heard in accordance with § 2.2-4020 of the Administrative Process Act (§ 2.2-4020 et seq.) and the state plan for medical assistance provided for in § 32.1-325." Va. Code § 32.1-325.1(B) (2002). Section 2.2-4020 sets out the procedure for formal agency appeals. By defining "initial determination" in terms of these sections, the legislature has made it clear that it intended for "initial determination" to mean the decision of the agency after an informal fact finding conference and before the formal agency hearing.

DMAS argues that Thornton Hall should not be allowed to benefit from the four-year limitation because all of the delays were at the request of Thornton Hall. *Appellee's Memo. in Supp. of Answer and Mot. to Dismiss*, at 14-15. DMAS claims that this statute is analogous to the Speedy Trial Act and any delays requested by Thornton Hall should not count against DMAS. *Id.* However, there are no tolling provisions in the statute; the four-year limitation is mandatory. Therefore, the Court finds that DMAS cannot collect for any repayments to Thornton Hall prior to July 6, 1997.

Another point raised by Appellees is that the statute should not be applied retroactively. *Id.* at 11. Appellees argue that the 2000 amendments to Virginia Code § 32.1-325.1 are not applicable in the case at bar because the overpayments occurred before the amendments. *Id.* While Appellees may be correct that the 2000 amendments do not apply, this point is irrelevant. Prior to the 2000 amendments, the statute read, in part: "The Director shall make an initial determination as to whether an overpayment has been made to a provider in accordance with the state plan for medical assistance, the provisions of § 9-6.14:11, and applicable federal law." Section 9-6.14:11 set out the procedures for informal fact finding conferences. Therefore, it is clear

that the legislature intended an initial determination to mean the decision of the agency after an informal fact finding conference and before the formal agency hearing.

*Issue # 2: Can DMAS collect overpayments to Multicare and Genesis from Thornton Hall, Inc.?*

In the briefs and at the hearing of this matter, parties disagreed as to whether Thornton Hall, Inc., had lost its right to appeal this issue because it failed to file timely exceptions after the IFFC hearing. In *Beverly Health & Rehabilitation Servs., Inc. v. Metcalf,* the Virginia Court of Appeals stated that an agency may review the recommendations of a hearing officer if one of the parties files exceptions, or it may review the findings on its own motion. 24 Va. App. 584, 484 S.E.2d 156 (1997). Because DMAS can review any finding of the hearing officer, whether or not the affected party files exceptions, it was not necessary for Thornton Hill, Inc., to file exceptions. Therefore, this argument is without merit.

According to the federal regulations governing Medicaid and Medicare funds, "The lease of all or part of a provider facility constitutes change of ownership of the leased portion." 42 C.F.R. § 489.18(a)(4) (2003). Subsection (c) provides, "When there is a change of ownership as specified in paragraph (a) of this section, the existing provider agreement will automatically be assigned to the new owner." *Id.*

DMAS has promulgated regulations governing the reimbursement process at issue in this appeal. "All matters of reimbursement which are part of the DMAS reimbursement system shall supercede Medicare principles or reimbursement. Wherever the DMAS reimbursement system conflicts with Medicare principles or reimbursement, the DMAS reimbursement system shall take precedence." 12 V.A.C. § 30-90-20 (2002). Thornton Hall, Inc., argues that under DMAS regulations, there is no change of ownership unless there is a bona fide sale. For support of this proposition, Thornton Hall, Inc., relies on 12 V.A.C. § 30-90-34(B) (2002) ("For purposes of Medicaid reimbursement, a 'bona fide' purchase shall mean a transfer of title and possession for consideration between parties that are not related."). However, Thornton Hall, Inc., takes this section out of context. This regulation addresses reimbursing a provider for the costs of purchasing a nursing facility, not the assignment of provider numbers in the event of a change of ownership.

In fact, the DMAS regulations do not address the assignment of provider numbers in the event that there is a change of ownership. Because the DMAS regulations are silent, the federal regulation applies. Therefore, there

was a change of ownership when Genesis breached its lease and Thornton Hall, Inc., began operating the nursing facility. DMAS may properly obtain reimbursement from Thornton Hall, Inc., as the provider of nursing care at Thornton Hall.

## Conclusion

The final decision of the Director of DMAS is reversed on the issue of overpayments prior to July 6, 1997. An "initial determination" is the decision of the agency after an informal fact finding conference, and it must be made within four years of the overpayment or DMAS may not seek reimbursement for those amounts. Because no initial determination was made before July 6, 2001, DMAS is precluded from collecting overpayments prior to July 6, 1997.

The final decision of the Director of DMAS is affirmed on the issue of collecting overpayments made to Medicare/Genesis. In the absence of a DMAS reimbursement regulation, federal Medicare regulations apply. There is no DMAS regulation covering assignment of provider numbers. Therefore, the federal regulation that defines a change of ownership to include changes in a lease controls, and DMAS was entitled to assign Genesis's provider number to Thornton Hall, Inc., when it took over operations at Thornton Hall.