Present: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and Goodwyn, JJ., and Lacy, S.J.

FREDERICK COUNTY BUSINESS PARK,
LLC, ET AL.

v.   Record No. 081175          OPINION BY SENIOR JUSTICE
                                    ELIZABETH B. LACY
VIRGINIA DEPARTMENT OF                 JUNE 4, 2009
ENVIRONMENTAL QUALITY, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal from a Court of Appeals' judgment sustaining the decision of the Virginia Department of Environmental Quality (DEQ), we consider whether the DEQ's decision that a facility proposed by Frederick County Business Park, LLC (FCBP), was a materials recovery facility (MRF) subject to the permitting requirements of the Virginia Solid Waste Management Regulations, 9 VAC § 20-80-10, et seq., was arbitrary or capricious.

FACTS

The facts are not in dispute. FCBP planned to collect construction waste in containers placed primarily at new home construction sites. The full containers would be taken to FCBP's proposed facility where marketable materials would be separated from the construction waste and stored in on-site containers for subsequent use or reuse. The materials FCBP planned to separate for recycling purposes included concrete,

corrugated cardboard, mixed paper, plastics, metal, and wood.[1]

FCBP estimated that 70% of the construction waste received at

the facility would be prepared for recycling and the remaining

30% would be transferred to a permitted landfill for disposal.

In December 2006, FCBP wrote a "courtesy" letter to the DEQ

describing the operation of its proposed facility and stating

its belief that no permit was required for the facility because

it was a recycling facility and Code § 10.1-1408.1(J) states

that no permit "shall be required . . . for recycling."  FCBP

also maintained that no permit was required because the

materials that were to be recycled were deemed not to be solid

waste under 9 VAC § 20-80-150(E) of the Virginia Solid Waste

Management Regulations.

The DEQ replied by letter dated March 26, 2007, stating

that although FCBP assumed that no permit was required, a

facility that receives "mixed wastes for on-site processing into

recyclable and unrecyclable fractions" as proposed by FCBP is a

MRF as defined in 9 VAC § 20-80-10 of the Virginia Solid Waste

Management Regulations.[2]

---

[1] FCBP originally also planned to recover and prepare drywall for use by others in the production of drywall and lime but ultimately eliminated this function.

[2] 9 VAC § 20-80-10 defines a MRF as a "solid waste management facility for the collection, processing and recovery of material such as metals from solid waste or for the production of a fuel from solid waste."

The DEQ noted that a "MRF receives mixed waste loads and extracts the recycle materials fraction from the waste prior to the transfer of the waste residuum for disposal."  The DEQ concluded that FCBP was therefore required to obtain a permit and meet the requirements of the Virginia Solid Waste Management Regulations for its proposed facility.

FCBP unsuccessfully appealed the DEQ's decision to the Circuit Court of Fairfax County and the Court of Appeals of Virginia.  Both tribunals held that the record supported the DEQ's factual finding that approximately 30% of the materials coming to the proposed facility would be non-recyclable, and that the DEQ's conclusion that the proposed facility was a MRF was not arbitrary or capricious.  Frederick County Bus. Park, LLC v. Virginia Dep't of Envtl. Quality, 52 Va. App. 40, 52, 660 S.E.2d 698, 704 (2008).

DISCUSSION

In its appeal to this Court, FCBP again asserts that in requiring a permit for the proposed facility, the DEQ improperly interpreted the Virginia Solid Waste Management Regulations and Code § 10.1-1408.1(J).  Specifically, FCBP argues that Code § 10.1-1408.1(J) exempts recycling facilities from any permitting requirements[3] and that under the DEQ regulations 9 VAC

_____

[3] Code § 10.1-1408.1(J) states that "[n]o permit shall be required . . . for recycling or for temporary storage incidental

3

§§ 20-80-150 and –160, the materials that would be separated at the facilities for recycling purposes do not constitute solid waste and are exempt from the permitting requirement.

The DEQ responds that construction waste is defined as solid waste, 9 VAC § 20-80-10, and that until the recyclable or reusable material is separated from the construction waste it does not become material "exempt" from the permitting process. The DEQ, reciting that a MRF is defined as a "solid waste management facility for the collection, processing, and recovery of material . . . from solid waste," 9 VAC § 20-80-10, continues, saying that sorting the solid waste received into recyclable or reusable components as proposed by FCBP is "exactly" the activity performed at a MRF. The DEQ also points out that not all the material separated from the construction waste will be recyclable or reusable; approximately 30% of the material will remain solid waste and be transferred to a permitted landfill for disposal. Because all material when received at the facility is construction waste, because of the nature of the sorting activity to be conducted at the proposed facility, and because 30% of the construction waste will not be recyclable or reusable material, the DEQ argues that it

---

to recycling." The subsection further defines "recycling" as "any process whereby material which would otherwise be solid waste is used or reused, or prepared for use or reuse, as an

4

correctly concluded that the proposed facility was a MRF and was not exempt from the permit requirement.

In reviewing agency decisions, we apply the following standards of review.  The agency's factual findings must be sustained if the record contains substantial evidence to support those findings.  Code § 2.2-4027.  If the decision under review involves an interpretation within the specialized knowledge of the agency and if the General Assembly has vested the agency with broad discretion to interpret and apply the relevant regulations, the agency's decision will be reversed only for arbitrary or capricious action that constitutes a clear abuse of the agency's delegated discretion.  See Virginia Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979).

The General Assembly has authorized the DEQ to supervise and control solid waste management activities and to promulgate regulations applicable to such activities.  Code §§ 10.1-1183, -1186, and -1402(11).  In considering FCBP's proposed facility, the DEQ was required to reconcile and harmonize provisions that represent the public policy of encouraging recycling and prudent management of solid waste.  While Code § 10.1-1408.1(J) defines "recycling" as a process in which "material that would otherwise

ingredient in an industrial process to make a product, or as an effective substitute for a commercial product."

5

be solid waste is . . . prepared for use or reuse," there is no statute or regulation that defines "recycling facility." Furthermore no regulation or statute addresses a situation, like the one in issue, where a facility separates materials some of which, but not all, will be recycled.

Considering the relevant statutes and regulations, the DEQ concluded that a permit was required for FCBP's proposed facility because the activities of the proposed facility fall within the definition of a MRF and 30% of the construction material received would remain solid waste and not be recycled or reused. Furthermore, as the DEQ argued, the materials deemed exempt or not subject to permitting requirements enter the proposed facility as construction waste and do not acquire an "exempt" status until they are separated into recyclable or reusable materials at the facility.

FCBP's position at its core is that no permit is required if some of the materials received at its facility will be prepared for use or reuse. Adopting this position would allow a facility to avoid the permitting requirement as long as any portion of the solid waste material it received was processed for recycling or reuse and in this case would allow the proposed facility to avoid the permitting requirement even though approximately one-third of the waste material it receives will not be recycled.

Under these circumstances, we cannot say that the conclusion reached by the DEQ was arbitrary or capricious resulting in an abuse of its delegated discretion. Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>