## CIRCUIT COURT OF ROANOKE COUNTY

American Healthcare, L.L.C.

v.

Department of Medical
Assistance Services
and Gregg A. Pane,
Director

January 9, 2012

Case No. CL11000548-00

By Judge Charles N. Dorsey

The Court has heard argument from counsel, reviewed the Petition for Appeal, the Brief in Support of Petition for Appeal, Appellee's Brief in Opposition/Reply Brief to Appellant's Petition for Appeal and Supporting Brief, Rebuttal Brief in Support of Petition for Appeal, and the file. In consideration of all of which, the Court, for the reasons stated reverses the Final Agency Decision and remands the matter to the Department of Medical Assistance Services with instructions to process the proper reimbursement allowance.

*Facts*

American Healthcare, L.L.C. (AHC) owns a chain of seventeen nursing homes in the Commonwealth of Virginia. The Department of Medical Assistance Services (DMAS), as a state agency, administers the Virginia Medicaid Program. DMAS disallowed almost one million dollars in provider liability costs from AHC's 2008 cost reports. AHC appealed this determination, and an administrative hearing officer heard the matter and ruled in favor of AHC. DMAS's Director, as a Final Agency Decision, rejected the hearing officer's decision and affirmed DMAS' disallowal of provider liability costs. AHC appealed the Final Agency Decision to this Court.

*Issue*

The issue in this appeal is what monetary sum a chain organization may claim in the aggregate for uninsured losses. Specifically, what interpretation is to be made of Provider Reimbursement Manual § 2162.5,[1] which provides in pertinent part that:

> Where you, at your option, are willing to commit your resources toward meeting first dollar losses through a deductible (as defined below), losses relating to the deductible are allowable costs in the year paid without funding if the aggregate deductible is no more than the greater of 10 percent of your (or, if appropriate, a chain organization's) net worth — fund balances as defined for Medicare cost reporting purposes — at the beginning of the insurance period or $100,000 per provider. . . . If your deductible or co-insurance exceeds the above requirements and the provider does not make payments into a fiduciary fund as required by § 2162.7, any losses paid by the provider in excess of the greater of 10 percent of the provider's or, if applicable, a chain organization's net worth, or $100,000 per provider, are not allowable.

Though both parties have appropriately raised, argued, and submitted authority for other issues, this issue is dispositive of this case. Consequently, there is no need for decision on the other issues raised. Stated even more simply, and simplistically, the ultimate issue is whether the portion of the regulation that states "$100,000 per provider," means that sum should be multiplied by each of the providers in the chain organization or only by each of the individual providers within the chain which reported losses. The parties concede that this issue is a case of first impression in Virginia.

*Standard of Review*

The parties essentially agree that the standard of judicial review of final agency decisions is clearly set out by statute and case law. The Virginia Administrative Process Act authorizes judicial review of agency decisions. *Avante at Roanoke v. Finnerty*, 56 Va. App. 190, 197, 692 S.E.2d 277 (2010) (citing Va. Code Ann. § 2.2-4027 (2011)). When reviewing an agency decision, the Court is required to "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Va. Code Ann. § 2.2-4027 (2012). "If the decision under review involves an interpretation within the specialized knowledge of the agency

---

[1]    A federal guidance document that DMAS claims it has made a regulation in Virginia, hereafter PRM-15 § 2162.5.

and if the General Assembly has vested the agency with broad discretion to interpret and apply the relevant regulations, the agency's decision will be reversed only for arbitrary or capricious action that constitutes a clear abuse of the agency's delegated discretion. *Frederick County Bus. Park, L.L.C. v. Virginia Dept. of Envtl. Quality*, 278 Va. 207, 211, 677 S.E.2d 42 (2009). In such cases, "the reviewing court will not substitute its own independent judgment for that of the agency." *Smith v. Liberty Nursing Home, Inc.*, 31 Va. App. 281, 293, 522 S.E.2d 890 (2000).

Consequently, the Court is bound by the decision of the agency unless the decision is arbitrary and capricious. The Court reviews the final agency decision with the understanding that "the Director shall adopt the hearing officer's recommended decision unless to do so would be an error of law or Department policy." Va. Code Ann. § 32.1-325.1(B).

*Analysis*

Subsection 2162.5 of the Provider Reimbursement Manual (PRM-15) is entitled "Allowability of Actual Losses Related to Deductibles or Coinsurance." PRM-15 § 2162.5. It provides, in pertinent part, that, where a provider opts to commit resources toward meeting first dollar losses through a deductible, that those "losses relating to the deductible are allowable costs in the year paid without funding if the aggregate deductible is no more than the greater of 10 percent of [a provider's] (or, if appropriate, a chain organization's) net worth . . . at the beginning of the insurance period or $100,000 per provider." *Id.* It appears the parties agree that AHC did not maintain an aggregate deductible on their policy at all. Because it is clear from the record that AHC did not purchase a policy with an aggregate deductible, this portion of the regulation cannot decide this matter.

However, PRM-15 § 2162.5 also contains a provision for providers or chains that choose to exceed the deductible allowed in the former provision. It provides that, if the deductible exceeds the aforementioned requirements and if the provider does not make payments into a special fiduciary fund (which AHC does not claim that it did), then "any losses paid by the provider in excess of the greater of 10 percent of the provider's or, if applicable, a chain organization's net worth, or $100,000 per provider, are not allowable." *Id.* In other words, if AHC did not comply with the aggregate deductible requirement, then it is not eligible for reimbursement for any costs in excess of 10 percent of its net worth or $100,000 per provider, whichever is greater.

While the parties evidently do not agree as to what AHC's net worth was at the time, it is clear from the pleadings and the record that 10% of the net worth would have been less than $1,700,000 ($100,000 per provider facility x 17 provider facilities in the AHC chain). *See generally* AHC Exhibit 8 at 24-25; Hearing Transcript (October 28, 2010) at 23, 89-91; DMAS Brief

at 6; AHC Brief at 15. Consequently, the Court views the $100,000 per provider language of PRM-15 § 2162.5 as the applicable provision in this dispute.

If the provision is read to allow an aggregate claim, then AHC is permitted reimbursement of up to $1,700,000 because it owns seventeen facilities and all of the claimed $970,247 is due to it. However, if the provision is read from the perspective of intending to curtail claims on a per provider basis, then it limits AHC's claim to a maximum of $100,000 per facility for those facilities that actually make a claim.

DMAS seems to make the argument, at times, that AHC should be treated as one provider and not as a chain of individual providers. If this were the case, AHC would be entitled to only $100,000 total in eligible reimbursement, as it would be considered one provider in the cumulative sense. This position is untenable. The provisions of PRM-15 clearly refer to a chain organization as a group of providers. As noted by the hearing officer, "The term `per provider' assumes more than one provider." Hearing Officer's Decision of December 17, 2010 at 4. To the extent that DMAS advances this position, it is rejected as clearly wrong, an arbitrary and capricious interpretation of the regulation, and at odds with the language's plain meaning. See Appellant's Brief in Support of Petition for Appeal, pp. 12-15, incorporated and adopted herein, except where inconsistent with this opinion.

To follow DMAS's logic, AHC could receive up to $1,700,000 in qualified reimbursements if every one of its providers had malpractice claims greater than $100,000 each. However, AHC is limited to $300,000 in reimbursement when claims originate from only three providers, despite the fact that the total of those claims falls well below $1,700,000. The Court finds this position unreasonable and cannot adopt this interpretation of PRM-15 § 2162.5.

In this case, the unreimbursed claims are $587,713 for provider Heritage Hall — Blacksburg, $236,826 for provider Heritage Hall — Nassawadox, and $145,708 for provider Heritage Hall — Grundy. DMAS Exhibit 10 at 2-3, DMAS Case Summary at HHcs000596-97. Under the $100,000 per provider limitation, AHC would be limited to $300,000 in collective reimbursement because those claims originated from only three of the chain's providers, each with eligible reimbursement claims over $100,000. If, however, the provision were read, in the alternative, to allow the owner to aggregate the allowances of all of the providers to create a cap by summation, then AHC would be permitted to combine its seventeen individual $100,000 allowances into an owner-wide $1,700,000 allowance. The entire issue is whether the final sentence of § 2162.5 should be read in the conjunctive, so as to permit aggregation of the allowances, or in the disjunctive to limit the losses on a per-provider basis despite common ownership.

DMAS's interpretation stands in opposition to the plain meaning of PRM-15 § 2162.5. The final provision makes expenses unreimbursable if they are "in excess of the greater of 10 percent of the provider's or, if applicable, a chain organization's net worth, or $100,000 per provider." The plain language provides that a chain may combine the worth of its individual providers in order to ascertain its net valuation for purposes of calculating the 10 percent. To interpret this differently would allow a chain to apply on a provider by provider basis, with the rate of reimbursement being governed by the worth of the individual provider, not the chain as an entirety. That proposition is completely without merit and stands in contravention of the language of PRM-15. It is wholly capricious and self-serving for DMAS to recognize that a chain must aggregate its net worth for purposes of the 10 percent rule, as provided for in the provision itself, but then to disallow aggregation of the $100,000 alternative without any legal or logical justification. The $100,000 alternative may be an arbitrary value itself, but that is the value chosen by DMAS. DMAS cannot claim to apply this provision and then interpret away its unambiguous meaning.

### Costs and Attorneys' Fees

The Court notes that this action was brought under the authority of § 32.1-325.1 of the Code of Virginia (1950), as amended. Pursuant to that statute, the appeal for "review of final agency determinations regarding provider reimbursement [was] made in accordance with the Administrative Process Act (§ 2.2-4000 *et seq.*)." Va. Code Ann. § 32.1-325.1(D) (2012). The Administrative Process Act allows for the recovery of costs and attorneys' fees in some situations. The Court recognizes that AHC has "substantially [prevailed] on the merits of the case and [that DMAS's] position [was] not substantially justified." Va. Code Ann. § 2.2-4030 (2012). Additionally, the Court cannot identify any "special circumstances that would make an award unjust." *Id.* Consequently, the Court will award AHC costs and reasonable attorney's fees. Counsel are directed to forward documentary evidence of such fees and objections to such fees and the amount will be determined separately.

### Conclusion

The DMAS Director's interpretation of PRM-15 § 2162.5, as rendered in the Final Agency Decision of February 18, 2011, is not supported by a reasonable understanding of the plain and unambiguous language of the provision and is, therefore, an arbitrary and capricious interpretation that must be set aside. The Final Agency Decision is reversed and the matter remanded to the Department of Medical Assistance Services with instructions to process a reimbursement in accordance with this opinion.