# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Decker, Russell and AtLee
Argued at Richmond, Virginia


VIRGINIA DEPARTMENT OF
 ENVIRONMENTAL QUALITY

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 0384-15-2                  JUDGE MARLA GRAFF DECKER
                                                OCTOBER 27, 2015
THE EAST END LANDFILL, LLC


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
W. Reilly Marchant, Judge

David C. Grandis, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia E. Hudson, Chief Deputy Attorney
General; Kelci A.M. Block, Assistant Attorney General, on briefs),
for appellant.

Andrea W. Wortzel (Troutman Sanders, LLP, on brief), for appellee.


The Virginia Department of Environmental Quality (DEQ) appeals the circuit court's

decision to remand the permit application of the East End Landfill (appellee) to the agency.

DEQ contends that the circuit court erred by reversing and remanding its decision on the

appellee's application and by awarding the appellee costs and attorneys' fees. We hold that the

court appropriately concluded that DEQ incorrectly interpreted the applicable statute. However,

we also hold that the appellee may not recover costs and attorneys' fees because the agency's

position, although incorrect, was reasonable. Consequently, we affirm in part, reverse in part,

and remand this case to the circuit court for action consistent with this opinion.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

The procedural history of this case is not in dispute. The appellee operates a solid waste management facility in Henrico County. It filed an application with DEQ seeking permission to expand its facility.

The solid waste management facility at issue is located within the boundaries of the Central Virginia Waste Management Authority (CVWMA), a multi-jurisdictional solid waste management planning authority. CVWMA is charged with developing and implementing a "comprehensive regional solid waste management plan." See Code § 10.1-1411(A).

In preparation for its application to DEQ, the appellee sent CVWMA a letter requesting an amendment to the regional solid waste management plan reflecting the proposed facility expansion. CVWMA replied with a letter stating that, consistent with the request, it had begun "the process of amending the [p]lan." The letter further stated that the process included a public hearing and required the approval of the Richmond Regional Planning District Commission, the Crater Planning District Commission, and the CVWMA board of directors. Finally, the letter represented that "[b]ased on the information" provided, the director of operations "anticipate[d] that the proposed [p]lan amendment [would] be approved."

The appellee included the letter from CVWMA as part of its DEQ application to modify its permit to allow facility expansion. DEQ deemed the appellee's application "complete."[1] DEQ noted that it would continue to review the application for "technical adequacy . . . in accordance with the Virginia Solid Waste Management Regulations."

---

[1] Specifically, DEQ found both the notice of intent and Part A of the application to be complete. A permit application is comprised of a notice of intent, Part A, and Part B. See 9 Va. Admin. Code § 20-81-450. Part A contains general information pertaining to site suitability. Id. After receiving approval of Part A, the applicant may submit Part B, which involves "the detailed engineering design and operating plans for the proposed facility." Id.

CVWMA subsequently found that the appellee's proposed expansion was "inconsistent with the local and regional solid waste needs." Consequently, it decided not to approve the appellee's request to amend the regional solid waste management plan.

DEQ conducted an informal fact-finding conference to consider the appellee's application. A regional director of DEQ issued proposed findings of facts and conclusions of law. She concluded that the agency could not "continue permit processing" in light of CVWMA's express rejection of the appellee's request to amend the regional solid waste management plan.

The director of DEQ reviewed the record and the regional director's recommendations. He adopted the regional director's proposed findings of facts and conclusions of law. Consequently, the director of DEQ concluded that the agency was "precluded from continuing to process [the appellee's] permit application."

The appellee appealed the agency decision to the circuit court. It argued, in pertinent part, that the agency disregarded its responsibility to independently determine "consistency between solid waste permit applications and solid waste management plans" and that the decision was not in accordance with state law. The circuit court found in favor of the appellee. The court held that the appellee's inclusion of the CVWMA letter, stating that it had "initiated the process to revise" the waste management plan, met the statutory requirement that the application contain a "certification" from the local governing body that the local "solid waste management planning unit ha[d] initiated the process to revise the solid waste management plan to include the . . . expanded facility." See Code § 10.1-1408.1(B)(9). The court concluded that CVWMA's subsequent decision that the proposed expansion was inconsistent with its waste management plan did not render the application incomplete. Accordingly, the circuit court set aside the DEQ decision and remanded the case to the agency for further administrative

proceedings.  In addition, the court held that the agency's position was "not substantially justified" and accordingly ordered it to pay the appellee reasonable costs and attorneys' fees.

## II.  ANALYSIS

DEQ appeals the decision of the circuit court.  The agency argues that its administrative decision to terminate the appellee's permit application was in accordance with the relevant statute.  It also challenges the circuit court's award of costs and attorneys' fees.

### A.  Statutory and Regulatory Framework

The Department of Waste Management was consolidated with other environmental state agencies to form DEQ.  Code § 10.1-1183.  DEQ is responsible for "supervis[ing] and control[ling] solid waste management activities."  Frederick Cty. Bus. Park, LLC v. DEQ, 278 Va. 207, 211, 677 S.E.2d 42, 45 (2009).  The purpose of the statutory scheme is to "protect the Commonwealth's environment, thereby promoting the health and well-being of her citizens." Browning-Ferris Indus. of S. Atl. v. Residents Involved in Saving the Env't, Inc., 254 Va. 278, 284, 492 S.E.2d 431, 435 (1997); see also Code § 10.1-1183.

Under the Virginia Waste Management Act, DEQ is responsible for reviewing applications for permits to operate landfills, including applications to modify permits to allow for facility expansions.  Code § 10.1-1408.1.  An application for a modification to a permit to allow a solid waste management facility expansion:

> shall include certification from the governing body for the locality in which the facility is . . . located that: (i) the proposed . . . expansion or increase in capacity of the existing facility is consistent with the applicable local or regional solid waste management plan . . . or (ii) the local government or solid waste management planning unit has initiated the process to revise the solid waste management plan to include the . . . expanded facility.

Code § 10.1-1408.1(B)(9).  The statute further provides that "[i]nclusion of such certification shall be sufficient to allow processing of the permit application, up to but not including

- 4 -

publication of the draft permit or permit amendment for public comment, but shall not bind the Director in making the determination required by subdivision D 1." Id.

The DEQ director's permit determination is "a substantive safeguard which completes the permit review process." Browning-Ferris, 254 Va. at 285, 492 S.E.2d at 435. Before the director can render a determination under subsection (D)(1), there must be an "evaluation of comments by the host local government, other local governments, and interested persons." Code § 10.1-1408.1(D)(1). In addition, in order for DEQ to permit a facility expansion, the DEQ director must determine that "the proposed solid waste management . . . facility expansion[] or additional capacity is consistent with regional and local solid waste management plans." [2] Id.

*B. Completion of the Application*

The parties agree that the issue is whether DEQ correctly determined that the appellee's application was incomplete under Code § 10.1-1408.1(B)(9). DEQ argues that although the application was complete at the time it was submitted, it was rendered incomplete once CVWMA decided not to pursue the requested amendment of the regional solid waste management plan.

Under the Virginia Administrative Process Act, on appeal of an agency decision to a circuit court, that court acts "in a manner 'equivalent to an appellate court's role in an appeal from a trial court.'" Commonwealth ex rel. State Water Control Bd. v. Blue Ridge Envtl. Def. League, Inc., 56 Va. App. 469, 479-80, 694 S.E.2d 290, 295 (2010) (quoting J.P. v. Carter, 24 Va. App. 707, 721, 485 S.E.2d 162, 169 (1997)). The "party complaining of agency action" bears the burden of "demonstrat[ing] an error of law." Code § 2.2-4027.

---

[2] This is one of six factors that the director is statutorily required to decide. Code § 10.1-1408.1(D)(1); see also 9 Va. Admin. Code § 20-81-450(B)(3). The five other factors are that the proposed expansion "protects . . . human health and safety and the environment," the additional capacity is needed, "sufficient infrastructure will exist to safely handle the waste flow," the proposal "is consistent with" state and local "daily disposal limits," and the proposal will serve "the public interest." Code § 10.1-1408.1(D)(1).

"Judicial review of an agency decision is limited to determining '1. [w]hether the agency acted in accordance with law; 2. [w]hether the agency made a procedural error which was not harmless error; and 3. [w]hether the agency had sufficient evidential support for its findings of fact.'" Blue Ridge Envtl. Def. League, 56 Va. App. at 480, 694 S.E.2d at 296 (alterations in original) (quoting Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 241, 369 S.E.2d 1, 6 (1988)). "The reviewing court may set the agency action aside, even if it is supported by substantial evidence, if the agency failed to comply with a substantive statutory directive." Browning-Ferris, 254 Va. at 284, 492 S.E.2d at 434.

Where an issue is purely one of statutory interpretation, this Court, like the circuit court, reviews the issue *de novo*. See Va. Dep't of Health v. NRV Real Estate, LLC, 278 Va. 181, 185, 677 S.E.2d 276, 278 (2009). "'[P]ure statutory interpretation is the prerogative of the judiciary.'" Blue Ridge Envtl. Def. League, 56 Va. App. at 481, 694 S.E.2d at 296 (quoting Mattaponi Indian Tribe v. DEQ ex rel State Water Control Bd., 43 Va. App. 690, 707, 601 S.E.2d 667, 676 (2004)). This is especially true "'if the statutory language is clear.'" Id. (quoting Shippers' Choice of Va., Inc. v. Smith, 52 Va. App. 34, 37-38, 660 S.E.2d 695, 696 (2008)).

"If the language is clear and unambiguous, we will assign the statute its plain meaning." Browning-Ferris, 254 Va. at 284, 492 S.E.2d at 435.

> Furthermore, we must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity. If a statute is subject to more than one interpretation, we must apply the interpretation that will carry out the legislative intent behind the statute.

Conyers v. Martial Arts World of Richmond, Inc., 273 Va. 96, 104, 639 S.E.2d 174, 178 (2007) (citations omitted). Consistent with this standard, "'[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction.'"

<u>Meeks v. Commonwealth</u>, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (alteration in original) (quoting <u>Commonwealth v. Zamani</u>, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)).  In other words, "[t]his Court must determine the General Assembly's intent from the words contained in the statutes."  <u>Tharrington v. Commonwealth</u>, 58 Va. App. 704, 710, 715 S.E.2d 388, 390 (2011).

Code § 10.1-1408.1 provides that an application to modify a permit to allow a solid waste management facility expansion shall include an official certification either that the proposal is "consistent with the applicable local or regional solid waste management plan" *or* that "the local government or solid waste management planning unit has *initiated* the process to revise the solid waste management plan to include the . . . expanded facility."  Code § 10.1-1408.1(B)(9) (emphasis added).  Under the plain language of the statute, inclusion of a certification from the local solid waste management planning unit that it has started the process to amend its waste management plan is the relevant threshold that triggers DEQ's ability to consider the application.[3]  <u>See generally</u> <u>Browning-Ferris</u>, 254 Va. at 284, 492 S.E.2d at 435 (holding that a portion of Code § 10.1-1408.1(D) was "clear and unambiguous").  Correspondingly, DEQ's ability to process an application is not contingent on the solid waste management planning unit *continuing* the process to revise the solid waste management plan.  Had the legislature intended to include a provision that a complete application would become incomplete in the event the solid waste management planning unit ceased its process or decided not to revise the plan, "it would have done so."  <u>See</u> <u>Wiencko v. Takayama</u>, 62 Va. App. 217, 231, 745 S.E.2d 168, 175 (2013) (limiting the interpretation of a code section to its actual text).  Consequently, DEQ was

---

[3] We note that when the language of a "'statute is obscure or its meaning doubtful, [a court] will give great weight to and sometimes follow the interpretation which those whose duty it has been to administer it have placed upon it.'"  <u>Nielsen Co. (US) v. Cty. Bd.</u>, 289 Va. 79, 88, 767 S.E.2d 1, 4 (2015) (alteration in original) (quoting <u>Superior Steel Corp. v. Commonwealth</u>, 147 Va. 202, 206, 136 S.E. 666, 667 (1927)).  In light of our holding that the relevant statutory language is clear and unambiguous, no deference is due to DEQ's interpretation in this case.

not barred by Code § 10.1-1408.1(B)(9) from continuing to process the application. The statute simply does not render a previously complete application incomplete due to a change in position by the local planning authority.

Once the application was complete and sufficient for processing under Code § 10.1-1408.1(B)(9), CVWMA's subsequent decision to not amend its waste management plan to reflect the proposed expansion was insufficient to stop DEQ's processing of the application. Instead, this factor was relevant to the director's ultimate determination under Code § 10.1-1408.1(D)(1). In particular, subsection (D)(1) mandates that the DEQ director determine whether "there is a need for the additional capacity" and whether the "additional capacity is consistent with regional and local solid waste management plans."

DEQ argues that the circuit court decision ignores the statutory language that the certification from the local authority is sufficient to allow application processing "up to but not including publication of the draft . . . permit amendment for public comment." See Code § 10.1-1408.1(B)(9). The phrase "up to" signifies that the inclusion of the certification is necessary to begin processing a filed application, but does not render an application sufficient to reach the public comment stage of the administrative process.[4] See generally AK Steel Corp. v. Sollac, 344 F.3d 1234, 1241 (Fed. Cir. 2003) (explaining that "when an object of the preposition 'up to' is nonnumeric, the most natural meaning is to exclude the object"). Consequently, the "up to" language in the statute does not support DEQ's position. To the contrary, it supports the appellee's position because the application had not yet reached the draft permit stage.

---

[4] The statutory language in question simultaneously signifies that more than the certification is needed in order for DEQ to open the public comment period on a draft amendment to a permit. It is DEQ's responsibility to specify the application procedures within the constraints of the statutory scheme.

For these reasons, the circuit court correctly concluded that DEQ erred and that the case should be reversed and remanded to the agency to continue the administrative review of the application in a manner consistent with the applicable law.

## C. Costs and Attorneys' Fees

The circuit court awarded the appellee costs and attorneys' fees to be paid by DEQ pursuant to Code § 2.2-4030. This Court reviews "the circuit court[']s] interpretation and application of Code § 2.2-4030" *de novo*. See Hollowell v. Va. Marine Res. Comm'n, 56 Va. App. 70, 83, 691 S.E.2d 500, 507 (2010) (noting, however, that the "actual amount of fees" is a matter falling within the circuit court's broad discretion).

Under Code § 2.2-4030, when a party contests an agency action, that party may recover "reasonable costs and attorneys' fees" from the agency if the party "substantially prevails on the merits of the case and the agency's position is not substantially justified, unless special circumstances would make an award unjust." An agency's position is "'substantially justified'" if that position is "'not unreasonable.'" Hollowell, 56 Va. App. at 87, 691 S.E.2d at 509 (quoting Jones v. West, 46 Va. App. 309, 333-34, 616 S.E.2d 790, 803 (2005)). An agency decision is not "unreasonable" merely because it is wrong. See, e.g., Jones, 46 Va. App. at 334, 616 S.E.2d at 803. For example, this Court has upheld the circuit court's denial of costs and attorneys' fees where the agency acted in accordance with "long-standing practice" that had not previously "'been tested in court.'" Id. at 333-34, 616 S.E.2d at 803 (quoting Motor Vehicle Dealer Bd. v. Morgan, 38 Va. App. 665, 672, 568 S.E.2d 378, 381 (2002)).

DEQ concluded that CVWMA's decision not to amend its waste management plan superseded its earlier certification that it had begun the amendment process. While the plain language of the statute compels an outcome contrary to DEQ's conclusion, the unique facts in

this case require an interpretation of the law that has not been tested in this Court. The appellee's counsel acknowledged at oral argument that this particular factual situation has not arisen prior to this case.[5] Although ultimately rejected by this Court and the circuit court, the agency's position here was "not unreasonable." Consequently, we reverse the circuit court's award of costs and attorneys' fees.

III. CONCLUSION

DEQ erroneously held that the CVWMA's certification was essentially voided by its change of position and that the agency therefore did not have the authority to continue to review the appellee's application. As the circuit court held, the appellee's application was still "sufficient to allow processing" under Code § 10.1-1408.1(B)(9). For this reason, we affirm the circuit court order and opinion reversing the DEQ decision and remanding the matter to the agency for further proceedings. However, because we conclude that the agency's position was not unreasonable, we reverse the portion awarding the appellee costs and attorneys' fees. We remand this case to the circuit court for entry of an order consistent with our decision.

Affirmed in part,
reversed in part,
and remanded.

---

[5] We note that at oral argument, the parties disputed whether DEQ followed long-standing practice in this case. We cannot conclude from the record, including those documents cited by counsel for support, that the agency had previously confronted a similar situation. However, DEQ's Solid Waste Permit Manual suggests that continuation of the application process is contingent on "the planning unit's confirmation of the completed plan revision." DEQ, Office of Solid Waste, Solid Waste Permit Manual 3-4 (2008). This portion of the manual could account for DEQ's interpretation of the relevant statute.