COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Causey and Bernhard
Argued at Norfolk, Virginia

THE EAST END LANDFILL, LLC

v.      Record No. 0603-24-1

VIRGINIA DEPARTMENT OF
  ENVIRONMENTAL QUALITY

THE EAST END LANDFILL, LLC

v.      Record No. 0604-24-1

VIRGINIA DEPARTMENT OF
  ENVIRONMENTAL QUALITY

THE EAST END LANDFILL, LLC

v.      Record No. 0605-24-1

VIRGINIA DEPARTMENT OF
  ENVIRONMENTAL QUALITY

MEMORANDUM OPINION[*] BY
JUDGE JUNIUS P. FULTON, III
JUNE 10, 2025

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Brenda C. Spry, Judge

Paul R. Schmidt (J. Bryan Plumlee; Poole Brooke Plumlee PC, on
briefs), for appellant.

Katherine E. Kulbok, Assistant Attorney General (Jason S. Miyares,
Attorney General; Steven G. Popps, Chief Deputy Attorney General;
Leslie A.T. Haley, Deputy Attorney General; A. Ross Phillips,
Senior Assistant Attorney General & Section Chief, on brief), for
appellee.

In this appeal we consider the revocation of a solid waste permit. The East End Landfill

(TEEL) appeals the Portsmouth Circuit Court's denial of its motion to show cause and writ of

_____

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

mandamus, as well as the trial court's affirmance of the revocation of their solid waste permit.[1] The Virginia Department of Environmental Quality (DEQ) revoked TEEL's solid waste permit on March 26, 2023, after finding that TEEL had stopped accepting solid waste in 2019, failed to maintain adequate financial assurances, and had committed a series of serious or repeated violations of DEQ regulations. TEEL argues on appeal that both DEQ and the trial court erred in revoking their solid waste permit. We disagree and affirm the trial court.

## BACKGROUND[2]

In April 2020, the DEQ sent TEEL a letter advising them that it was "in the process of reviewing . . . compliance with" the applicable regulations authorizing its solid waste permit. The letter noted that if TEEL was in violation of DEQ regulations, TEEL would be required to cease operations within 180 days of last accepting waste disposal.[3] In May 2020, the DEQ sent TEEL a second letter, advising that upon review of financial assurance documents submitted by TEEL, it appeared that TEEL had also failed to maintain adequate financial assurances as mandated by DEQ regulations. In response, TEEL filed two separate appeals to the trial court, claiming that each letter was an appealable case decision. While those appeals were pending in the trial court, DEQ scheduled a formal hearing for October 2021 to determine whether to revoke TEEL's solid waste permit. The formal hearing focused on three potential grounds for revocation, two of which were the subject of the April and May letters: (1) TEEL ceasing to

---

[1] This case consists of three consolidated appeals. Record No. 0603-24-1 relates to the April 2020 letter, Record No. 0604-24-1 relates to the May 2020 letter, and Record No. 0605-24-1 relates to the permit revocation. As the briefs address these appeals together, this Court will as well.

[2] "Under the applicable standard of review, we view the evidence in the light most favorable to [the DEQ] as the party who prevailed below." *Bennett v. Commonwealth*, 69 Va. App. 475, 479 n.1 (2018) (citing *Riner v. Commonwealth*, 268 Va. 296, 303, 327 (2004)).

[3] The Henrico County Board of Zoning Appeals had previously revoked TEEL's conditional use permit to accept solid waste.

accept waste in 2019, (2) TEEL failing to maintain adequate financial assurances, and (3) a pattern of serious or repeated violations of DEQ regulations by TEEL.[4] In August 2021, the trial court held that the 2020 letters were not final case decisions, dismissed the appeals, and remanded the matter back to the DEQ for a formal hearing. TEEL then filed motions requesting that the trial court reconsider. However, before the trial court issued a ruling on the motions to reconsider, DEQ held a four-day formal hearing in October 2021. After the formal hearing commenced but before the hearing officer issued a decision, the trial court granted TEEL's motions to reconsider and suspended its dismissal orders. The parties then agreed to delay "the Hearing Officer's findings of fact and recommendations," thus delaying the resolution of the formal hearing before DEQ until the trial court reconsidered whether the 2020 letters were final case decisions.

On December 8, 2022, the trial court reversed its previous decision and found that the April and May 2020 letters were final case decisions that did not comply with the Virginia Administrative Procedure Act's factfinding requirements. The trial court entered two final orders setting aside those case decisions and "remand[ing] to [the Department] for further proceedings" pursuant to Code §§ 2.2-4019 and -4020.[5]

On remand back to the DEQ, TEEL argued that the October 2021 formal hearing could not satisfy the trial court's order mandating "further proceedings" and that a new formal hearing was required without consideration of the allegations in the April and May 2020 letters. The hearing officer disagreed and on February 17, 2023, issued her recommended findings of fact

---

[4] The third ground of serious or repeated violations was asserted for the first time in DEQ's notice of formal hearing issued February 24, 2021.

[5] Code § 2.2-4019 provides that "[a]gencies shall ascertain the fact basis for their decisions of cases through informal conference or consultation proceedings unless the named party and the agency consent to waive such a conference or proceeding to go directly to a formal hearing." Code § 2.2-4020 sets forth the required procedure for formal hearings.

and conclusions of law based on the evidence heard at the October 2021 formal hearing. In her final decision, the hearing officer expressly acknowledged that the trial court had set aside the April and May 2020 letters and stated that she did not consider those letters in making her recommendations. The hearing officer concluded that the DEQ should revoke TEEL's solid waste permit because: (1) TEEL was no longer accepting solid waste; (2) TEEL did not maintain adequate financial assurances; and (3) TEEL committed serious or repeated regulatory, permit, and statutory violations. In March of 2023, DEQ adopted the hearing officer's recommendation and revoked TEEL's permit. TEEL again appealed to the trial court. TEEL also filed motions to show cause and petitions for a writ of mandamus in each of the two prior cases concerning the 2020 letters. TEEL argued that the DEQ failed to conduct "further proceedings" as required by the trial court's orders.

After briefing and argument, in March 2024, the trial court held that the DEQ's March 2023 case decision revoking TEEL's solid waste permit complied with the law. The trial court also denied TEEL's motions to show cause and petitions for a writ of mandamus. TEEL appeals all three decisions. The appeal regarding the April 2020 letter is Record No. 0603-24-1. The appeal regarding the May 2020 letter is Record No. 0604-24-1. And the appeal regarding the serious or repeated violations reflected in the March 2023 case decision is Record No. 0605-24-1. These cases have been previously consolidated by the trial court and therefore are considered by this Court as one.

## ANALYSIS

"The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (citing *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). We review the actions of state agencies with discretion towards the agency's factfinding and regulatory interpretation and must sustain the

- 4 -

agency's finding if substantial evidence exists in the record to support the agency's decision. *See* Code § 2.2-4027.

"The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hedleston v. Va. Retirement Sys.*, 62 Va. App. 592, 599 (2013) (quoting *Va. Real Estate Comm'n v. Bias*, 226 Va. 264, 269 (1983)). In other words, we "may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242 (1988). "The duty of the court with respect to the issues of law shall be to review the agency decision de novo." Code § 2.2-4027.

Additionally, when we review an agency's interpretation of its own regulation, we also give deference to its interpretation.

> If the decision under review involves an interpretation within the specialized knowledge of the agency and if the General Assembly has vested the agency with broad discretion to interpret and apply the relevant regulations, [we reverse] only for arbitrary or capricious action that constitutes a clear abuse of the agency's delegated discretion.

*Frederick Cnty. Bus. Park, LLC v. Va. Dep't of Env't Quality*, 278 Va. 207, 211 (2009).

TEEL brings fourteen combined assignments of error before this Court. Because our resolution of assignment of error XIV is dispositive of the whole matter, we need not address the remaining assignments of error I-XIII.[6]

---

[6] In their briefs, TEEL offers an additional argument not included in their assignments of error. They claim that the recent case *Securities and Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), from the United States Supreme Court—holding that the Seventh Amendment guarantees the right to a jury trial in agency proceedings where the claim is "legal in nature"— gives TEEL the right to a jury trial in this case. The Seventh Amendment has not heretofore been applied to the states, and we decline to entertain TEEL's invitation to consider this claim for the first time on appeal, especially considering that TEEL did not raise this argument before the trial court.

<u>DEQ Established a Pattern of Repeated or Serious Violations</u>

TEEL argues that DEQ was unable to establish a pattern of serious or repeated violations because (1) the consent orders and April and May letters from which TEEL asserts provides the bulk of DEQ's evidence are not admissible and should not be considered and (2) because the violations noted were not only not serious but were not repeated such that it would establish a pattern. DEQ argues that the consent orders and the April and May letters may certainly be considered, but even if this Court decides not to, there is sufficient evidence of violations since the last consent order was signed in 2019 to find a pattern of serious or repeated violations. We agree.

Under Code § 10.1-1409(A),

> [a]ny permit issued by the Director pursuant to this article may be revoked . . . on any of the following grounds . . . (1) the violation is representative of a pattern of serious or repeated violations which, in the opinion of the Director, demonstrate the permittee's disregard for or inability to comply with applicable laws, regulations or requirements.

TEEL argues that the DEQ improperly relied upon the consent orders signed by the parties prior to this litigation because the consent orders are settlement documents and thus are not admissible evidence for the hearing officer to consider. We disagree. The consent orders themselves directly contemplated their use in future disputes between the parties: "For purposes of this Order and subsequent actions with respect to this Order only, TEEL admits to the jurisdictional allegations, and agrees not to contest, but does not admit, the findings of fact and conclusions of law in this Order." Consent orders also provide "insight and a historical perspective as to the relationship between the parties."

Furthermore, evidentiary rules in agency proceedings are far more relaxed than those in a judicial proceeding.

> The rules of evidence are considerably relaxed in administrative proceedings, and the findings of administrative agencies will not be reversed solely because evidence was received which would have been inadmissible in court. No reversible error will be found in such cases unless there is a clear showing of prejudice arising from the admission of such evidence, or unless it is plain that the agency's conclusions were determined by the improper evidence, and that a contrary result would have been reached in its absence.

*Va. Real Estate Comm'n v. Bias*, 226 Va. 264, 270 (1983). Hearing officers are permitted great discretion in deciding what evidence they will consider in making their decision. *See* Code § 2.2-4020(C) ("[t]he presiding officers at the proceedings may . . . (ii) receive probative evidence, exclude irrelevant, immaterial, insubstantial, privileged, or repetitive proofs"); *LifeCare Med. Transps., Inc. v. Va. Dep't of Med. Assistance Servs.*, 63 Va. App. 538, 553 (2014) ("Evidentiary rulings at an administrative agency formal hearing, therefore, are within the discretion of the presiding officer.").

In this case, the hearing officer found that the consent orders were not settlement documents, the trial court affirmed this finding, and we do not disturb that ruling on appeal. Therefore, any violations noted in those letters could be considered by the hearing officer, and subsequently by the trial court, when deciding whether TEEL's behavior constituted repeated or serious violations. In our review of the record, we find more than enough evidence to support the hearing officer's finding of serious or repeated violations and, by extension, the trial court's affirmance of that decision. The evidence available in the record easily satisfies the substantial evidence standard and thus we will not disturb the trial court's findings.

Furthermore, we agree with DEQ that even if we were to disregard any consideration of the consent orders there would still be sufficient evidence of multiple violations to satisfy the "repeated or serious violations" standard from the time period beginning after the last consent order was signed. For example, in the five inspections DEQ completed after the last 2019 consent order was signed, DEQ found "reporting issues, recordkeeping issues, cover issues,

landfill gas collection issues . . . leachate collection issues . . . fire response issues, leachate seeps . . . [and] unauthorized waste received and maintained onsite." Each of these violations, apart from the "cover issues," is classified in DEQ guidance documents as "severe."[7] As such, we cannot say that the trial court's decision was arbitrary and capricious when it found that there was substantial evidence of serious or repeated violations supporting DEQ's revocation of TEEL's solid waste permit.

## CONCLUSION

For the foregoing reasons, we affirm the ruling of the trial court.

*Affirmed.*

---

[7] These definitions are established in the "Solid Waste Compliance Program Inspection Memo," a guidance document under Code § 2.2-4101.